**Miscellaneous Docket No. _____**

# United States Court of Appeals for the Federal Circuit

IN RE MPHJ TECHNOLOGY INVESTMENTS, LLC,

*Petitioner.*

*Petition for a Writ of Mandamus to the U.S. District Court for the District of Vermont in Case No. 2:13-CV-170-WKS Judge William K. Sessions III*

## PETITION FOR WRIT OF MANDAMUS

W. Bryan Farney
Farney Daniels PC
800 South Austin Avenue
Suite 200
Georgetown, Texas 78626
Telephone: (512) 582-2828
Facsimile: (512) 582-2829
BFarney@farneydaniels.com

*Counsel for Petitioner*

May 14, 2014

**<u>Certificate of Interest</u>**

1.      The full name of every party represented by me is:

MPHJ Technology Investments, LLC.

2.      There are no other real parties in interest represented by me.

3.      MPHJ Technology Investments, LLC certifies that it has no corporate parent and there are no publicly held corporations that own 10% or more of its stock.

4.      The names of all the firms or lawyers that appeared for the party now represented by me in the trial court or are expected to appear in this court are as follows:

Bryan Farney and Cassandra Klingman, Farney Daniels PC, 800 S. Austin Avenue, Suite 200, Georgetown, TX  78626;

Andrew D. Manitsky, Gravel & Shea PC, 76 St. Paul Street, 7th Floor, P.O. Box 369, Burlington, VT 05402-0369.

Dated:  May 14, 2014                         */s/ W. Bryan Farney*
                                                    W. Bryan Farney

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

RELIEF SOUGHT ...........................................................................6

JURISDICTIONAL STATEMENT ........................................6

STATEMENT OF THE ISSUE...............................................7

STATEMENT OF FACTS .......................................................7

STANDARD OF REVIEW ......................................................9

REASONS WHY THE WRIT SHOULD ISSUE ................................10

    I.    This Court Is Clear That State Law Is Preempted As To Patent Enforcement Correspondence Unless It is Both Pled And Proven That The Conduct Is Objectively Baseless And Subjectively Baseless ...............................................................................11

    II.    Given Vermont's Complaint And Disavowal Of Objective Baselessness, The District Court Abused Its Discretion In Denying MPHJ's Motion ..................................................................14

        A.    Vermont Did Not Plead, And Has Disavowed Any Intention To Satisfy *Globetrotter*, And Its Case is Thus Preempted.............14

        B.    Rule 11 Plainly Applies, And Denial Was An Abuse Of Discretion ..................................................................15

        C.    The State's Arguments To Avoid Rule 11 Do Not Support A Conclusion That The District Court's Denial Of MPHJ's Motion Was Not An Abuse Of Discretion...............................17

        D.    The State's Argument That A Vermont State Court Might Rule Differently On Preemption Does Not Support A Conclusion That The District Court's Denial Of MPHJ's Motion Was Not An Abuse Of Discretion.........................................................18

III.   If This Court Does Not Direct Dismissal Under Rule 11,
       Mandamus Is Warranted To Provide Guidance That "Bad Faith"
       Requires Proof Of Objective Baselessness, And That The State's
       Contentions Fail As A Matter Of Law To Meet That Standard .........19

       A.   If This Court Does Not Direct Dismissal, The Lower Courts
            And The Parties Will Benefit From This Court's Confirmation
            Of The Law To This Case..........................................................19

       B.   The Vermont AG's Sweeping View Of "Bad Faith" As Not
            Requiring Proof Of Objective Baselessness Is Contrary To Law
            ...............................................................................................19

       C.   None Of The State's Contentions Regarding Bad Faith Relate
            To Objective Baselessness ........................................................21

            1.   State's Claims Lacking Legal Basis ...............................21

            2.   State's Claims That Are Meritless On Their Face .........23

            3.   State's Claims That Are Plainly Subjective ...................24

IV.   Mandamus Is Proper And Appropriate In This Case ..........................27

       A.   Dismissal Under Rule 11 Is A Proper Purpose of Mandamus
            Here .......................................................................................27

       B.   Mandamus Also Is Proper To Provide Guidance ....................29

       C.   MPHJ Has No Other Adequate Means To Obtain This Relief.29

CONCLUSION ....................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrival Star, Inc. v. Descartes Sys. Group, Inc*.,
2004 U.S. Dist. LEXIS 22433 (S.D.N.Y. Nov. 5, 2004)...............................7, 22

*Big Air Pylons, Inc. v. Correct Craft, Inc., et al.*,
No. 12-cv-00068 (W.D. OK, June 21, 2012) ......................................................9

*In re Brady*,
2013 U.S. App. LEXIS 7264 (Fed. Cir. 2013) ..................................................30

*Buchanan v. U.S.,*
82 F.3d 706 (7th Cir. 1996) ..............................................................................29

*Business Guides, Inc. v. Chromatic Communications Enterprise*,
498 U.S. 533 (1991)...........................................................................................16

*Bywaters v. United States*,
670 F.3d 1221 (Fed. Cir. 2012) ..........................................................................4

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
208 F.3d 885 (10th Cir. 2000) ..........................................................................12

*Chemiakin v. Yefimov*,
932 F.2d 124 (2d Cir. 1991) ..............................................................................15

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)............................................................................................4

*Concrete Unlimited v. Cementcraft, Inc*.,
776 F.2d 1537 (Fed. Cir. 1985) ..........................................................................5

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990)...........................................................................................16

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
524 F.3d 1254 (Fed. Cir. 2008) ........................................................................13

*Eastway Constr. Corp. v. City of New York*,
762 F.2d 243 (2d Cir. 1985) ..............................................................................16

iv

*England v. Louisiana State Bd. of Medical Examiners*,
 375 U.S. 411 (1964).................................................................................3

*Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,*
 527 U.S. 627 (1999) (Stevens, J., dissenting).......................................4

*Forrestor Envtl. Servs. Inc. v. Wheelabrator Techs., Inc.*,
 715 F.3d 1329 (Fed. Cir. 2013) .............................................................6

*Globetrotter Software, Inc. v. Elan Computer Croup, Inc*.,
 362 F.3d 1367 (Fed. Cir. 2004) ....................................................*passim*

*Golan v. Pingel Enter., Inc.,*
 310 F.3d 1360 (Fed. Cir. 2002) ....................................................*passim*

*GP Indus. v. Eran Indus*.,
 500 F.3d 1369 (Fed. Cir. 2007) ....................................................*passim*

*Herron v. Jupiter Transp. Co.*,
 858 F.2d 332 (6th Cir. 1988) ...............................................................15

*Hildebrand v. Steck Mfg. Co*.,
 279 F.3d 1351 (Fed. Cir. 2002) .............................................................5

*Hoffmann-La Roche Inc. v. Invamed Inc*.,
 213 F.3d 1359 (Fed. Cir. 2000) ......................................................7, 10

*In re Innovatio IP Ventures, LLC*,
 2013 U.S. Dist. LEXIS 15968 (N.D. Ill. Feb. 4, 2013) ..........12, 26, 27

*Judin v. United States*,
 110 F.3d 780 (Fed. Cir. 1997) .....................................................7, 22, 23

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
 695 F.3d 1322 (Fed. Cir. 2012) ....................................................*passim*

*McCright v. Santoki,*
 976 F.2d 568 (9th Cir. 1992) ...............................................................29

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
 165 F.3d 891 (Fed. Cir. 1998) ...............................................................8

v

*Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*,
    422 F.3d 72 (2d. Cir. 2005) ...............................................................30

*Primetime 24 Joint Venture v. Nat'l Broad. Co.*,
    219 F.3d 92 (2d Cir. 2000) ...............................................................18

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)......................................................................*passim*

*Sampson v. United States*,
    724 F.3d 150 (1st Cir. 2013).........................................................4, 11

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964)..........................................................................10

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225 (1964)............................................................................5

*In re Shared Memory Graphics LLC*,
    659 F.3d 1336 (Fed. Cir. 2011) .........................................................10

*In re Sony BMG Music Entm't*,
    564 F.3d 1 (1st Cir. 2009)...........................................................10, 11

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) .............................................................12

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997) ...............................................7, 22, 23

*Stafford v. Ellis*,
    1992 U.S. Dist. LEXIS 12007 (D. Colo. July 27, 1992) ...................16

*Storey v. Cello Holdings L.L.C.*,
    347 F.3d 370 (2d Cir. 2003) ..............................................................16

*U.S. v. Green*,
    407 F.3d 434 (1st Cir. 2005)........................................................10, 11

*United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*,
    389 U.S. 217 (1967)..........................................................................11

vi

*Virginia Panel Corp. v. MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997) ................................................................8

*Virtue v. Creamery Package Mfg. Co.*,
    227 U.S. 8 (1913)...............................................................................8

*Willy v. Coastal Corp.*,
    915 F.2d 965 (5th Cir. Tex. 1990) ....................................................15

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999) .........................................12, 13, 20

**Statutes**

9 V.S.A. § 4197 (Exh. 27) ....................................................................6

28 U.S.C. § 1291 ...................................................................................29

28 U.S.C. § 1295(a)(1) ...........................................................................6

28 U.S.C. § 1447(d) .........................................................................2, 28

28 U.S.C. § 1651 ....................................................................................6

28 U.S.C. § 1927 ........................................................................4, 11, 17

42 U.S.C. § 1983 ...........................................................................*passim*

Lanham Act................................................................................................20

Vermont Consumer Protection Act..............................................1, 9, 26

**Other Authorities**

First Amendment..........................................................................*passim*

Fourteenth Amendment .................................................................1, 5

Bill of Rights ................................................................................11

FED. R. CIV. P. 11(b)(1).............................................................4, 11, 28

Rule 11 ......................................................................................*passim*

Rule 12 ......................................................................................*passim*

U.S. Constitution..............................................................................4

# **INTRODUCTION**

Petitioner MPHJ Technology Investments, LLC ("MPHJ") respectfully submits this Petition for Writ of Mandamus. This Petition presents a novel circumstance involving preemption that goes to the heart of the purpose for which Congress created this Court – to maintain national uniformity in the patent law.

MPHJ owns U.S. patents that cover networked scanner systems that are widely used. Exh. 9 at 1-2; Exhs. 16-20. However, because such systems are internal to a business, infringement typically cannot be confirmed from publicly available information. Exh. 9 at 2-4. This Court's precedents require (and permit) MPHJ to make an inquiry regarding the suspected infringement, before any suit may be filed. *Id.* MPHJ began sending patent enforcement correspondence for this purpose in late 2012, including to suspected infringers in Vermont. *Id.* at 4-7.

The Vermont Attorney General decided in late 2012 to use the Vermont Consumer Protection Act ("VCPA") to shut down patent enforcement in Vermont by non-practicing patent owners (which he calls "patent trolls"). *Id.* at 7-8. He chose MPHJ as his first target. In doing so, the Vermont AG recognized his plan faced constitutional barriers. A key barrier was this Court's law on preemption.[1]

Applying Supreme Court law, this Court has held that state law is preempted as to patent enforcement activity unless it is pled and proven that the conduct is both objectively baseless as well as subjectively baseless. *See, e.g., Globetrotter*

---

[1] An additional constitutional barrier is this Court's jurisprudence holding that the Fourteenth Amendment Due Process clause prevents exercising personal jurisdiction over a patent owner in the forum state merely for sending letters. Exh. 12 at 6-13. The Vermont AG insists that Vermont state court can and will ignore this law and decide it has personal jurisdiction over MPHJ. *See* Exh. 13, *passim.*

*Software, Inc. v. Elan Computer Croup, Inc.*, 362 F.3d 1367, 1374-76 (Fed. Cir. 2004); *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). Proving objective baselessness requires proof that no reasonable person could believe there was a chance of success on the merits of the patent claim. *Id.* Consistent with this law, this Court repeatedly has held that a complaint asserting state law against a patent owner for enforcement correspondence must be dismissed under Rule 12(b)(6) if it does not explicitly plead objective and subjective baselessness. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1332 (Fed. Cir. 2012).

The Vermont AG set out to avoid this Court's preemption jurisprudence by drafting the complaint to avoid any allegation of objective baselessness, and by insisting he was making no allegation of invalidity or noninfringement. Exh. 4 at 17 n.12.  He did so in order to argue his case presented no federal question, so as to convince a federal court it lacked jurisdiction. Exh. 8. If successful, he relied upon 28 U.S.C. § 1447(d) to avoid this Court's review of that jurisdictional decision.

As for Vermont state court, the Vermont AG has made clear his position that this Court's and other federal courts' law on preemption is irrelevant. Exh. 5 at 16-20.  In the Vermont AG's view, a state court may apply state law to a patent owner without any pleading or proof of objective baselessness. *Id*. Further, the Vermont AG has insisted that even if he must show "bad faith," he can simply ignore *Globetrotter* and make a showing of subjective bad faith only. *Id.* at 20-25.

The Vermont AG's plan to usurp federal patent law and evade this Court's jurisprudence ultimately should fail. The state court will be presented with a Rule

2

12(b)(6) motion to test whether Vermont will follow this Court's law in cases such as *Matthews*. If it does, then the State's case will fail, but MPHJ will have been forced to incur substantial delay and costs that were unnecessary.

If the Vermont state court instead errs and finds that the State's Complaint satisfies the State's version of Rule 12(b)(6), as the State's AG insists it will do, then the proceedings will be multiplied even more vexatiously. At that stage, to avoid waiver of its right to have the preemption issue heard in federal court, MPHJ will be required to file suit in federal court under 42 U.S.C. § 1983.[2] While there is little doubt that in federal court MPHJ would prevail in getting the State's action dismissed or enjoined,[3] it will incur unnecessary time and expense in doing so.

After MHPJ properly removed the State's complaint from state court to federal court (Exh. 7), the State moved to remand (Exh. 8). It argued that its complaint did not give the federal court subject matter jurisdiction for two reasons: one was that the State had not directly pled objective baselessness, or made any direct allegation of invalidity or noninfringement and thus presented no federal question; and the second was that preemption is an affirmative defense, and any material patent law issues raised by the preemption issue cannot be considered in

---

[2] While the law on Section 1983 is unfamiliar territory to patent owners, it appears that for MPHJ to preserve its right to have its constitutional rights protected in federal court, it must not substantively raise them in state court. *See, e.g., England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964).
[3] This is no idle speculation. While formerly unheard of in patent litigation, MPHJ has successfully asserted Section 1983 against the Nebraska AG who also took similar action against MPHJ. In that case, the court granted a preliminary injunction against the Nebraska AG under Section 1983. *See* Exhs. 6-8. A summary judgment motion is pending in that case and the court has indicated MPHJ is likely to prevail. *Id*.

3

deciding whether the original complaint presented a federal question. Exh. 8, *passim*. This argument was successful and the case was remanded. Exh. 1.

However, while the case was pending in federal court, MPHJ filed a Motion for Sanctions under Rule 11 and under 28 U.S.C. § 1927. Exhs. 4 & 6. Given that ultimately the State's plan to assert state law must fail on preemption grounds, it is clear that maintenance of the case in federal court violated Rule 11, as it has caused unnecessary delay and needlessly increased the cost of litigation (and continues to do so). FED. R. CIV. P. 11(b)(1). It also violated 28 U.S.C. § 1927. The actions of the Vermont AG to prolong this case strike directly at the very thing Rule 11(b)(1) seeks to prevent.[4] The district court's denial of MPHJ's Motion was an abuse of discretion and a ground for this Petition for Mandamus. Issues raised by the State's position on preemption present an alternative ground, as explained herein.[5]

The issue presented here goes to the heart of why this Court was created by Congress – to secure national uniformity in the application of the patent laws.[6] This

---

[4] The Court in its remand order correctly held that *Globetrotter* applies, and that to avoid preemption the State must prove "bad faith." Exh. 1 at 21 n.5. However, it is not clear the state court will apply *Globetrotter*, but it is quite clear that the State will argue it can prove the "bad faith" required without proving objective baselessness. Thus, mandamus is separately appropriate for the Court to give guidance on this. *Sampson v. United States*, 724 F.3d 150, 159 (1st Cir. 2013).

[5] MPHJ also has filed a Notice of Appeal, and out of caution has identified the denial of its Motion as one issue. Exh. 28. *See* Section IV, *infra*.

[6] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 813 (1988) ("one of Congress' objectives in creating a Federal Circuit … was 'to reduce the widespread lack of uniformity … in the administration of patent law.'"). *See also Bywaters v. United States*, 670 F.3d 1221, 1227 (Fed. Cir. 2012). Indeed, national uniformity in the patent laws was the very reason that the Patent Clause was included in the U.S. Constitution. *See Florida Prepaid Postsecondary Educ.*

4

Court has held among the rights provided by the patent laws are the rights to give notice of infringement, to threaten suit, and to seek licenses. *See Concrete Unlimited v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985); *Globetrotter*, 362 F.3d at 1374. It has held that the Fourteenth Amendment protects a patent owner from being subject to personal jurisdiction in a recipient state because of the strong policy reasons favoring the sending of such letters. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). And, it has held the First Amendment "right to petition" clause also provides constitutional protection to patent enforcement correspondence. *Globetrotter*, 362 F.3d at 1376.

Vermont and its Attorney General dislike these patent rights and their associated constitutional protections, and now seek intentionally to evade them by the artifice of drafting a complaint in a way that they can argue does not allege federal patent law issues, including objective baselessness on the merits of validity or infringement.  If the Vermont AG succeeds in this approach, it will be a catastrophe for the national uniformity of patent law, and for the nation's patent owners.  Not only Attorneys General, but any private recipient of a patent demand or inquiry letter can adopt this same approach, avoid federal court, and simply tie up a patent owner in state court and ancillary federal Section 1983 litigation indefinitely.[7]  Further, if successful, Vermont's suit will establish fifty different

---

*Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 648-51 (1999) (Stevens, J., dissenting); *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231, n.7 (1964).
[7] In some cases the patentee may remove on diversity grounds, but that will not apply to an in-state patent owner, nor to one whose infringement claim involves royalties of less than the jurisdictional amount. No Attorney General will face this issue because States are not subject to diversity jurisdiction. Exh. 1 at 24-25.

standards for patent owners in the different states. This is particularly troubling when one considers what some may urge violates state law.[8]

## **RELIEF SOUGHT**

MPHJ respectfully requests this Court grant this petition for a writ of mandamus, and direct the Vermont district court to grant MPHJ's Motion for Sanctions, and dismiss the State's case and award such other sanctions as appropriate. Exh. 4. In the alternative, MPHJ requests this Court confirm that the State's Complaint should be dismissed under Rule 12(b)(6) in accordance with *Matthews*, and further confirm that preemption requires proof of objective baselessness (as well as subjective baselessness), and that the State's allegations relate at most to subjective baselessness and are legally inadequate to defeat preemption.

## **JURISDICTIONAL STATEMENT**

This Court properly has jurisdiction under 28 U.S.C. § 1295(a)(1) & 1651. The State's Complaint asserts multiple claims under state law, at least some of which necessarily raise material issues of patent law. *See* Exhs. 9 & 11.  The district court's error on this point does not affect this Court's jurisdiction.[9]

---

[8] MPHJ has had State AGs insist that it violates state unfair trade practices law to send a patent demand letter to any infringer unless the owner knows in advance that the infringer was aware of the patents before the infringement began. One insisted the letters sent by MPHJ violated state law because they said the recipient "likely infringed" instead of "possibly infringed."  In the wave of anti-patent letters statutes now being passed, a patent owner can violate them even if its case has merit, if the letter fails to satisfy many different requirements unrelated to the merits. *See* 9 V.S.A. § 4197 (Exh. 27); Oregon SB 1540 A; 2013 Wisconsin Act 339.
[9] *See Forrestor Envtl. Servs. Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329 (Fed. Cir. 2013) (explaining a federal issue is necessarily raised in "state claims

## STATEMENT OF THE ISSUE

The first issue presented is whether the District Court abused its discretion by denying MPHJ's Motion for Sanctions, where the Vermont AG deliberately did not plead, and has insisted he will not prove, that MPHJ's conduct was objectively baseless, and thus cannot avoid preemption under the First Amendment and the federal patent law. The second issue presented is whether the State's position that it need not plead or prove objective baselessness, or that it can meet any such burden by proving subjective considerations, is wrong as a matter of law.

## STATEMENT OF FACTS

The U.S. patents owned by MPHJ cover inventions related to networked scanning systems that are in widespread use, including in Vermont. *See* Exh. 9 at 1-2. MPHJ can only seek remedy for infringement from the end-user of the systems because the patents cover the entire system, and no single manufacturer of a scanner or other system component has liability for infringement. *Id.* Also, enforcing the patents poses challenges because a system is <u>internal</u> to a business, and <u>public</u> proof of infringement typically is not available. *Id.*

To satisfy its pre-suit Rule 11 investigation obligation, the law permits (and requires)[10] that MPHJ make inquiry of a suspected infringer before bringing suit. *Id.* at 2-4. This was the primary purpose of MPHJ's enforcement correspondence

---

premised on allegedly false statements about patents"); *Hunter Douglas, Inc.*, 153 F.3d at 1329, 1337 (similar).

[10] *See e.g., Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363-65 (Fed. Cir. 2000); *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) (similar). *See also Arrival Star, Inc. v. Descartes Sys. Group, Inc.*, 2004 U.S. Dist. LEXIS 22433, at *36 (S.D.N.Y. Nov. 5, 2004).  Indeed, this Court has made it clear that such an inquiry can be necessary. *See also Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997).

to Vermont recipients.[11] *Id.* Separate and apart from this Rule 11 right and obligation, as a patent owner MPHJ also has the right to inform likely infringers of the patents, to threaten suit, and to offer a license.[12]

To accomplish these lawful goals, MPHJ first carefully identified the types of businesses that were highly likely to have infringing systems. Exh. 15 at Exhs. A-1 & A-2. It then sent a first letter[13] that explained the patents, provided easy checklists to confirm if the company happened to not infringe, and also expressed willingness to resolve past and ongoing infringement with a royalty and a license. Exh. 21. Importantly, the letter made it clear that if the recipient did not have an infringing system, no license was needed, and the sender wished only to be so informed by the recipient so it would know to discontinue contact. *Id*.

Hardly any recipients responded to the first letter. Exh. 15 at Exh. A-1. MPHJ then had its counsel send a second letter that referred to the first letter and asked for a response. Exh. 12. It was stressed again to the recipient that if it did not have an infringing system, the client merely wished to be so informed so it would know to discontinue contact. *Id.*

---

[11] The State likely will point out that MPHJ sent letters to thousands of suspected infringers across the country, but only Vermont recipients are relevant here. MPHJ notes that it carefully identified those companies likely to infringe to about 5% of the recognized types of businesses, and limited its inquiry to those publicly identified as having over 20 employees. *See* Exh. 15 at Exh. A-1. That infringement is widespread is no evidence of wrongdoing.

[12] *See Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37-38 (1913); *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998).

[13] MPHJ decided to divide the licensing responsibility among a number of subsidiaries, each with exclusive sublicensing rights for certain recipients. Exh. 15 at Exh. A-1. While it was these licensing entities who sent the correspondence, for convenience, MPHJ will refer to them collectively as "MPHJ" for simplicity here.

A few, but not many, responded to the second letter. Exh. 15 at Exh. A-1. MPHJ then had its counsel send a third letter. Exh. 23. The third letter explained that neither MPHJ nor its counsel had received a response from the recipient from either the first or second letter, and requested a response. *Id.* The letter explained that if the recipient had an infringing system, it needed to take a license to avoid litigation, and that if it did not have an infringing system, it did not need a license, and only needed to so inform MPHJ so that the matter could be closed. *Id.*

To ensure that a later district court, and ultimately this Court, would conclude that MPHJ had made sufficient efforts to make a reasonable pre-suit inquiry sufficient to satisfy its Rule 11 obligation, the third letter made clear to the recipient that in the absence of a response to the third letter, MPHJ would make the reasonable assumption of infringement, and would have a basis to bring suit. *Id.* To make this clear, a draft complaint was included. *Id.*[14]

It is the sending of these three types of letters into Vermont that is the sole basis of the suit by the Vermont AG. That suit asserts multiple claims using the VCPA as a legal theory. These are addressed fully, *infra*, at Section IV. While all the accusations concocted by Vermont from these letters are false, the relevant point for this Petition is that none make an allegation of objective baselessness.

## STANDARD OF REVIEW

A writ of mandamus may be employed "in extraordinary circumstances to

---

[14] Such a letter is clearly lawful. *Big Air Pylons, Inc. v. Correct Craft, Inc., et al.*, No. 12-cv-00068 (W.D. OK, June 21, 2012) (defendant's sending an unfiled complaint to the plaintiff in addition to cease and desist letters, fails to even give rise to personal jurisdiction in the recipient state).

correct a clear abuse of discretion or usurpation of judicial power" where it is shown that the party seeking the writ "has no other means of obtaining the relief desired . . . and that the right to issuance is clear and indisputable." *In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1339 (Fed. Cir. 2011) (citing cases). In reviewing a decision under Rule 11, this court applies the "abuse of discretion" standard. *Hoffman-La Roche Inc.,* 213 F.3d at 1363.

The Court can provide "advisory" mandamus in review of "basic, undecided questions." *Schlagenhauf v. Holder*, 379 U.S. 104, 110-11 (1964). *See generally* 16 Wright et al., § 3934.1; *In re Sony BMG Music Entm't*, 564 F.3d 1, 3-4 (1st Cir. 2009) ("[w]e may entertain a petition that 'presents a systemically important issue as to which this court has not yet spoken'"). "The aim of advisory mandamus. . . is to settle substantial questions of law in circumstances that 'would assist other jurists, parties, [and] lawyers.'" *U.S. v. Green*, 407 F.3d 434, 439 (1st Cir. 2005).

## REASONS WHY THE WRIT SHOULD ISSUE

Mandamus is proper here for two independent reasons.  First, the District Court clearly abused its discretion in denying MPHJ's Rule 11 Motion when he denied it on grounds that he had never in 18 years granted a Rule 11 motion because that is not "the Vermont way." Exh. 3 at 98-100. Indeed, he denied the Motion before even receiving MPHJ's reply brief. Exh. 6. Here, the law is clear. Where the State failed to plead objective baselessness, has disavowed and is estopped from alleging invalidity or noninfringement, and will cite at most subjective considerations to avoid preemption, the State's case plainly will fail as a matter of law on preemption grounds. Maintaining a meritless case is the epitome

10

of a violation of Rule 11(b)(1), and of 28 U.S.C. § 1927. As such, the Court abused its discretion in failing to consider MPHJ's Motion on the merits, and in denying it.

A second reason mandamus is proper is that while MPHJ believes this Court should enforce Rule 11 against the State, at a minimum, in the alternative, this Court should provide the parties and lower courts an "advisory" mandamus making clear that the failure to plead objective baselessness requires dismissal under Rule 12(b)(6) (or the state equivalent), and that the refusal to make any allegation regarding the validity or infringement merits of the case necessarily fails to demonstrate objective baselessness, and that the State's insistence that it can prove objective baselessness by subjective allegations is wrong as a matter of law. Such a holding is a proper use of mandamus, as it will aid parties and lower courts in future proceedings on the case (as well as parties involved in similar actions in the future). *Sampson* , 724 F.3d at 159; *Sony*, 564 F.3d at 3-4; *Green*, 407 F.3d at 439.

## I.    This Court Is Clear That State Law Is Preempted As To Patent Enforcement Correspondence Unless It is Both Pled And Proven That The Conduct Is Objectively Baseless And Subjectively Baseless

The Supreme Court holds the First Amendment's "right to petition" is as important, and as protected, as any in the Bill of Rights, including the rights of free speech and free press. *See United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). Thus, the Supreme Court has held that bringing a lawsuit is immune from allegations of wrongdoing unless it is a "sham" or not "genuine," by which the Court means it must first be proven to be "objectively baseless," and then be proven also to be "subjectively baseless." *See Prof'l Real*

11

*Estate Investors, Inc.*, 508 U.S. at 56. The Court defines "objectively baseless" to mean that "no reasonable litigant could expect success on the merits." *Id.* at 60.

The Federal Circuit has extended the *Prof'l Real Estate* petitioning immunity to pre-litigation communications and not just actual suits. In *Globetrotter*, the Federal Circuit concluded that every single regional circuit, with the possible exception of the Tenth Circuit,[15] had reached the same conclusion – that pre-suit communications are protected by First Amendment petitioning immunity unless they can be shown first to be objectively baseless, and then also to be subjectively baseless.[16] *Globetrotter*, 362 F.3d at 1376. The Federal Circuit in *Globetrotter* reinforced this holding by reaffirming its prior decisions in *Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340 (Fed. Cir. 1999) and *Golan v. Pingel Enter., Inc.,* 310 F.3d 1360, 1371 (Fed. Cir. 2002).

In place of the term "sham" or "genuine" the Federal Circuit has often used the term "bad faith." *See, e.g., Zenith*, 182 F.3d at 1354. The State here has tried to misuse that term, and intends to attempt to confuse the state court on this issue by

---

[15] The Tenth Circuit case is *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885 (10th Cir. 2000). The State's argument that it should not be subject to Rule 11 sanctions is based on arguing that *Cardtoons* is the law. Exh. 5. But in reaching its conclusion in *Globetrotter*, the Federal Circuit expressly rejected *Cardtoons*. That decision also has been strongly criticized by the Ninth Circuit in *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006), and not followed by any other regional circuit to consider the question.

[16] District Courts have correctly applied the Federal Circuit's law to require objective baselessness to avoid preemption. *See Motorola Solutions, Inc. v. In re Innovatio IP Ventures, LLC*, 2013 U.S. Dist. LEXIS 15968, at *64-69 (N.D. Ill. Feb. 4, 2013) (patentee's "general statements about the number of licenses it has granted, the cost of those licenses, the reputation of the inventors of its patents, and the number of times its patents had been adjudicated are all peripheral to the question of infringement," and thus, "those statements do not make [the patentee's] licensing campaign a sham.").

arguing that "bad faith" can be proven by showing subjective bad faith, and need not require showing objective baselessness. Exh. 5 at 20-25.  It was in *Globetrotter* that this Court squarely addressed, and rejected, this position. The Court held that "the question before us is whether the bad faith standard of *Zenith* can be satisfied in the absence of a showing that the claims asserted were objectively baseless. We hold that it cannot." *See Globetrotter*, 362 F.3d at 1375. In doing so, the Court explained that it "applied the *Professional Real Estate* objectively baseless test in [*Golan*] where, as here, the party challenged statements made in cease-and-desist letters by a patentee asserting its patent rights." *Id.* at 1377.

In *GP Indus.*, the Court had the occasion to apply this principle. *GP Indus. v. Eran Indus.*, 500 F.3d 1369, 1373 (Fed. Cir. 2007).  There the district court found the patent owner's correspondence was subjectively baseless and issued a preliminary injunction against the owner. *Id.* This Court agreed that there was evidence to support a conclusion of subjective bad faith, but held that where there was no proof of objective baseless, preemption would still apply. *Id.* Thus, the State's contention that it can prove "bad faith" to avoid preemption by proving subjective considerations unrelated to the objective issue of whether a reasonable person could believe there was a chance of success on the merits, is plainly wrong. *See also Matthews Int'l Corp.,* 695 F.3d at 1332; *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008).

In addition to requiring proof of both objective and subjective baselessness to establish preemption, this Court has repeatedly made it clear that in order to state a claim asserting state law against a patent owner for sending enforcement

correspondence, the challenger must <u>plead</u> each type of baselessness in the

complaint. *See, e.g., Globetrotter*, 362 F.3d at 1374. The Federal Circuit has also

made it clear that a generic pleading of bad faith (such as in Vermont's Complaint)

does not satisfy this requirement, and would require dismissal under FED. R. CIV.

P. 12(b)(6) for failure to state a claim. *Matthews Int'l Corp*., 695 F.3d at 1322

(affirming district court's finding that the plaintiff failed to sufficiently plead bad

faith necessary to avoid *Noerr Pennington* immunity, because the plaintiff had

only conclusorily pled bad faith).

## II.    Given Vermont's Complaint And Disavowal Of Objective Baselessness, The District Court Abused Its Discretion In Denying MPHJ's Motion

### A.    Vermont Did Not Plead, And Has Disavowed Any Intention To Satisfy *Globetrotter*, And Its Case is Thus Preempted

In this case, the entirety of the State's pleading of "bad faith" is as follows:

"Defendant acted in bad faith by sending these letters to Vermont businesses."

Exh. 2 at ¶ 54. Clearly this is insufficient to satisfy *Matthews* and in federal court

would require dismissal under Rule 12(b)(6). The Vermont AG insists a state court

may simply ignore *Matthews*. Exh. 5 at 20 n. 11. Plainly, this cannot be the law.

Further, the State has disavowed any intention of addressing the merits of

MPHJ's patents, insisting it has not pled and will not address invalidity or

noninfringement (conceding it is making that disavowal in order to stay out of

federal court).[17] It is evident on this basis that the State's case is preempted under

---

[17] *See* Exh. 4 at 17 n.12 (citing State's numerous assertions that it will not address invalidity or noninfringement). *See also* Exh. 10 at p. 1("True, the letters sent by MPHJ alleged patent infringement. But the State's consumer fraud claims have nothing to do with the validity of MPHJ's patents. Nor does the State's complaint address whether, in fact, any Vermont businesses are infringing the patents.  Even assuming the patents may be valid, and some Vermont businesses may have

*Globetrotter.* In its Opposition, the State did not deny that it expressly disavowed

pleading invalidity or noninfringement, but instead argued that its generic pleading

of "bad faith" encompassing only subjective considerations, at best, was

sufficient.[18] *See* Exh. 5 at 6-7. Clearly, it is not.

### B.    Rule 11 Plainly Applies, And Denial Was An Abuse Of Discretion

Rule 11 applies here to each filing made by the State in the district court.[19]

Thus, with each filing in the District Court, the State certified that its filings were

"not being presented for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation." FED. R. CIV. P. 11.

It is clear that if the Vermont state court correctly follows Federal Circuit

and U.S. Supreme Court precedent, it will dismiss the State's case for failure to

state a claim. However, if the Vermont state court defies the well-settled

preemption law, MPHJ will then be required to file a case against the State under

42 U.S.C. § 1983, on which it ultimately should prevail.[20] As a result, it is clear

Vermont's suit ultimately will fail, though its tactics, if unchecked, can force

---

infringed those patents, the letters sent to Vermont consumers were unfair and deceptive."); Exh. 5 at 21 n. 12 ("The State's claim in this case, however, is not directed to the validity or scope of MPHJ's patents."); Exh. 3 at 3-6 (confirming State will not challenge validity).

[18] The State's position is that patent enforcement correspondence is no different than selling "magazine subscriptions," or "cloud computing services" and that allegedly deceptive statements made in patent correspondence is subject to state law regardless of the merits of the patent infringement issues. Exh. 10 at 1.

[19] Rule 11 applies while a case removed from state court is pending in federal court. *See Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335-36 (6th Cir. 1988); *Willy v. Coastal Corp.,* 915 F.2d 965 (5th Cir. Tex. 1990); *Chemiakin v. Yefimov,* 932 F.2d 124, 128 (2d Cir. 1991).

[20] In fact, MPHJ has done just that with respect to similar actions by the Nebraska Attorney General. *See* Exhs. 24-26.

MPHJ and the lower courts substantial unnecessary time and expense.

It is easy to see the district court abused its discretion when it denied MPHJ's motion on grounds Rule 11 is not "the Vermont way" and because he had not granted such sanctions in eighteen years. Exh. 3 at 98-100. It is equally clear that the State's position, that it can maintain a state law case against MPHJ's patent enforcement activity without proving objective baselessness, is meritless on its face.[21] *See, e.g., Matthews Int'l Corp.*, 695 F.3d at 1322.  As such, this Court should find the district court abused its discretion, and grant MPHJ's Motion.[22]

If the Court agrees with MPHJ that the State has violated Rule 11 by filing and advocating its filings in the District Court, an appropriate sanction here is dismissal of the State's suit. *See, e.g*., *Business Guides, Inc. v. Chromatic Communications Enterprise*, 498 U.S. 533, 543 (1991); *Stafford v. Ellis*, 1992 U.S. Dist. LEXIS 12007, at *22 (D. Colo. July 27, 1992) (dismissal was appropriate because the complaint itself was the principle document that violated Rule 11).  In this case, MPHJ's sanctions motion incorporates the State's entire Complaint as

---

[21] It is worth noting that Rule 11 can be violated by showing objective meritlessness even if the Court concludes the State is making its meritless argument in good faith. *Storey v. Cello Holdings L.L.C.,* 347 F.3d 370, 387 (2d Cir. 2003). *See also Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253-54 (2d Cir. 1985) (subjective bad faith is not required to trigger Rule 11 sanctions, nor does a showing of subjective good faith provide a safe harbor against sanctions).

[22] *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990) (an appellate court should apply an abuse of discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on an erroneous assessment of the evidence). The State argues that MPHJ's Rule 11 Motion was filed mainly to "test the legal sufficiency" of the State's Complaint, and that its claims are "grounded in reasonable interpretations of state and federal law." Exh. 5 at 1. This is false. Here, it is clear that the State's case has no chance of success.

baseless, contrary to law and doomed to fail. Exhs. 4 & 6. As the State itself agrees, "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." Exh. 5 at 1 (citing *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991)). This is exactly that situation. As such, dismissal is the appropriate remedy to avoid further waste of the parties and the court's time and resources. The Court also may award any other additional sanctions it deems appropriate. *See* Rule 11(c)(2 & 4); 28 U.S.C. § 1927.

### C.    The State's Arguments To Avoid Rule 11 Do Not Support A Conclusion That The District Court's Denial Of MPHJ's Motion Was Not An Abuse Of Discretion.

The State's position is that by litigating its case in state court, it can ignore this Court's preemption jurisprudence, and assert state law without pleading objective baselessness, and without proving it. The State claims that "[o]n issues of federal law, the Vermont state court is bound by the United States Supreme Court, but not any particular federal circuit," and, as a result, a Vermont state court can ignore *Noerr Pennington*. Exh. 5 at 18 & n.10.

Here the State's argument that *Globetrotter* does not apply has been rejected, as the district court made it the law of the case. Exh. 1 at 21 n.5 (citing *Globetrotter*, 362 F.3d at 1374) ("[i]t is true that MPHJ may assert federal patent law as a defense to the State's claim, as '[f]ederal patent law preempts state-law tort liability for a patent-holder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation'" ).

Thus, the Court rejected the State's defense that *Globetrotter* did not apply in its remand order. Exh. 1 at 21 n.5.  That ruling makes the district court's refusal

to even consider, or grant, MPHJ's Rule 11 Motion even more an abuse of discretion. Where the district court agrees the State must make pleading and proof that it did not make and disavows any intention to make, MPHJ should not be forced to expend resources in litigating the meritless case in state court.[23]

### D. The State's Argument That A Vermont State Court Might Rule Differently On Preemption Does Not Support A Conclusion That The District Court's Denial Of MPHJ's Motion Was Not An Abuse Of Discretion.

The State also argued that a state court could ignore *Globetrotter*, and thus its case was not meritless. Exh. 5 at 18-19.  But this is flawed for two reasons. First, even if the District Court had deferred to the state court, the federal court was required to consider the law as it is – as defined by this Court – not as the State contends a state court might erroneously decide it differently. Second, there is no reason to believe a state court would find differently than both the Federal Circuit and Second Circuit (and every other regional circuit except perhaps the Tenth). *Globetrotter*, 362 F.3d at 1376; *see also Primetime 24 Joint Venture v. Nat'l Broad. Co.,* 219 F.3d 92, 100 (2d Cir. 2000). As the Supreme Court originally established the bad faith standard, and as that standard has been repeatedly reaffirmed by nearly every regional circuit, the State's argument that a Vermont

---

[23] This well-settled body of law has been specifically applied to the enforcement activity of MPHJ that Vermont accuses.  In Nebraska, the AG followed Vermont's lead, and took improper action against MPHJ by issuing a Cease and Desist Order against MPHJ's law firm.  Every allegation of wrongdoing made by Vermont was presented in that case. The district court applied this Court's law and found Nebraska state law preempted because the AG could not plead, nor submit any proof, that MPHJ's conduct was objectively baseless. The court granted MPHJ a preliminary injunction against enforcement of the Order, and indicated a permanent injunction is likely following the court's review of the parties' summary judgment briefing. *See* Exhs. 24-26.

state court should or could find differently on preemption is simply wrong. Denial of MPHJ's Motion on that basis is plainly an abuse of discretion.

**III.    If This Court Does Not Direct Dismissal Under Rule 11, Mandamus Is Warranted To Provide Guidance That "Bad Faith" Requires Proof Of Objective Baselessness, And That The State's Contentions Fail As A Matter Of Law To Meet That Standard**

**A.    If This Court Does Not Direct Dismissal, The Lower Courts And The Parties Will Benefit From This Court's Confirmation Of The Law To This Case**

If this Court declines to reverse the district court's denial of MPHJ's Rule 11 Motion, the state court will consider a Rule 12(b)(6) motion on preemption.  That court will benefit from this Court's confirming that *Matthews* should apply, and that subjective allegations are irrelevant to showing objective baselessness, contrary to the position asserted by the Vermont AG. Exh. 5.

If the state court denies MPHJ's Rule 12(b)(6) motion, then, as noted, procedurally MPHJ will next have to file a Section 1983 case in federal court. That court also would benefit from this Court's confirming that the State's subjective allegations do not suffice to satisfy the objectively baseless part of the *Globetrotter* "bad faith" requirement.

**B.    The Vermont AG's Sweeping View Of "Bad Faith" As Not Requiring Proof Of Objective Baselessness Is Contrary To Law**

In prior briefing, the State has contended that even if *Globetrotter* applies, it could meet its burden to prove "bad faith" by proving subjective allegations. *See* Exh. 5 at 21-25. Indeed, the State has claimed that it could use subjective allegations even to meet any burden that might be imposed upon it to prove "bad faith," as objective baselessness is only "one way" to prove bad faith. *Id.* at 21.

19

Clearly this is not the law.

In *Zenith*, this Court held application of the Lanham Act to a patent enforcement correspondence was preempted unless "bad faith" was proven. *Zenith*, 182 F.3d at 1346. The Court also noted that what could constitute bad faith could "be based on case by case basis." *Id.* at 1354. Vermont has seized on this statement to argue that it can present anything that might be called "bad faith" and show preemption, even if it is unrelated to the merits. Exh. 5 at 21.

In doing so, Vermont mistakenly relies upon the fact that this Court has used the term "bad faith" in the same way the Supreme Court uses the terms "sham" or "not genuine."[24] *See, e.g., Zenith*, 182 F.3d at 1346 (preemption applies absent a showing of "bad faith"). But like the Supreme Court, this Court made it emphatically clear in *Globetrotter* that the term "bad faith," such as used in *Zenith*, includes a requirement to first prove objective baselessness. *Globetrotter*, 362 F.3d at 1375. This requires showing no reasonable person could believe that the patent owner had any chance of success on the merits of validity and infringement. *See id.* ("Greer made no effort to establish that the claims asserted by Globetrotter with respect to the '369 or '412 patents were objectively baseless, either because those patents were obviously invalid or plainly not infringed."); *GP Indus.*, 500 F.3d at 1375 (same); *Golan*, 310 F.3d at 1371 (same). The State's position that subjective allegations will prove "bad faith" is simply wrong.

---

[24] As the Supreme Court noted, use of these labels can lead to confusion, and thus the Court made clear these terms require showing the conduct is both objectively baseless and subjectively baseless. *Prof'l Real Estate Investors*, 508 U.S. at 61.

**C.    None Of The State's Contentions Regarding Bad Faith Relate To Objective Baselessness**

Simply considering the many claims asserted by Vermont shows it cannot meet the burden of proving objective baselessness even if it could prove any of those claims (which it cannot). Even if this Court does not dismiss, the lower courts will benefit from this Court's confirmation that the State's allegations, like those in *Globetrotter* and *GP Indus.*, do not relate to objective baselessness. There are sixteen claims in the State's Complaint. Exh. 2 at ¶¶ 56 & 57.  They can be divided into groups:  (1) those that are legally meritless; (2) those that are on their face nonsensical; and (3) those that by definition could relate at most only to subjective baselessness. None would suffice to show objective baselessness as this Court has defined it, as none of them relate to the merits of MPHJ's patents.[25]

**1.    State's Claims Lacking Legal Basis**

A number of the State's claims are simply legally meritless.  In ¶56c, the State claims it violates state law for a patent owner to send a patent infringement inquiry letter (or presumably even a patent demand letter) to a company too small to afford a patent attorney.  Plainly there is no immunity in patent law based upon

_____

[25] While MPHJ explains here that all of the State's allegations have no relevance to the predicate issue of objective baselessness, it notes its strong denial that any of these allegations are even true.  The State will undoubtedly note that MPHJ reached resolution of claims by the Minnesota AG and the New York AG.  But in doing so, MPHJ admitted no wrongdoing and paid no money.  It simply resolved the matter to avoid the litigation costs.  MPHJ is successfully asserting preemption against Nebraska, and against the FTC, who threatened MPHJ with suit.  These cases are pending and pose as their predicate issue the preemption question. The Vermont AG's actions precipitated these other actions by entities. They also have ignored preemption and wrongly misdirected their ire at so-called patent trolls against MPHJ, who was acting lawfully in seeking to enforce patents very widely infringed and having unusual Rule 11 inquiry requirements.

company size, or the ability to afford an attorney.[26] In ¶56g, the State claims it violates state law for a patent owner to use exclusive licensees to carry out its licensing effort, alleging this "hides the true owners" of the patents. Plainly the law permits using exclusive licensees, and there is no legal requirement that that exclusive licensee identify the patent owner. Here, the allegation is more spurious, as MPHJ was identified as the patent owner in the U.S. Patent Office, in publicly available records. Exh. 9 at Exh. G. There was no attempt to hide anything.

In ¶56d, ¶56e, and ¶56f, the State makes allegations that plainly reveal it fundamentally misunderstands Rule 11, this Court's requirement in *Judin*, and the pre-suit inquiry process permitted by *Hoffman*, *SRI*, as well as *Arrival-Star*. Under those cases, MPHJ is required (and permitted) to make inquiry of suspected infringers without having proof of their infringement in advance, as the State contends state law requires. These allegations are in fact an oxymoron. By definition, MPHJ could not have sent infringement inquiry letters to fulfill its obligations under those cases if it already had in hand the proof of infringement the State insists is required. Thus, in ¶56d, the State insists MPHJ broke state law when it sent a patent infringement inquiry letter without having independent evidence of infringement in advance. Plainly this makes no sense. Similarly, the claims in ¶56e and ¶56f are legally wrong. *Hoffman* in particular holds that it is not an improper imposition to inquire of a suspected infringer regarding suspected infringement. And it is not an improper burden to ask for reasonable

---

[26] The State's allegation, if successful, would create an amorphous class of entities immunized from patent infringement allegations that could vary from state to state.

documentation confirming noninfringement.[27]

¶56b also reveals the State's failure to comprehend the process. The State alleges it violated state law for MPHJ to have its counsel send the follow-up letters, and to include a draft complaint in the third letters so that non-responders would understand the suit that would be filed.  The State also contends that the use of counsel wrongly implied that MPHJ had done sufficient investigation to file suit. The State simply fails to understand, or ignores, that under *Hoffman*, *SRI*, *Judin*, and *Arrival-Star*, it was the letters themselves that provided the necessary Rule 11 support. The allegation in ¶56b is again an example of a legally meritless claim.

### 2.    State's Claims That Are Meritless On Their Face

In ¶57c, the State alleges that MPHJ did not have a reasonable basis to identify the recipients as infringing its patents. But this simply ignores the letters. MPHJ at best could identify entities likely to infringe, and then make inquiry under *Hoffman*, *SRI*, *Arrival-Star* and *Judin*.  Moreover, the State has disavowed any intention to prove what it takes to establish infringement of MPHJ's patents, and thus is estopped from even proving this claim. Without proof of what the patent claims require, which the State is now estopped from raising, it cannot possibly prove whether MPHJ had a reasonable basis to suspect infringement.

The State also makes allegations that MPHJ's licensing entities sent letters to recipients that they did not have the rights to sublicense. These allegations are

---

[27] *See Arrival Star, Inc.*, 2004 U.S. Dist. LEXIS 22433 at *36. While MPHJ noted documentation might be necessary, it also provided simple checklists a recipient could review to confirm noninfringement in a manner that required no documentation. Those recipients who did indicate noninfringement did so without providing documentation. *See* Exh. 15 at Exh. A-1.

included in ¶57d and ¶57e. Setting aside that these allegations are untrue, they also are meritless. As MPHJ owns and controls those entities, any license granted by that entity, even if outside its legal authority, would plainly act as an estoppel on MPHJ and give the recipient the benefit of the license. Exh. 15 at Exh. A-1. Thus, while MPHJ denies there were any errors in this regard, any errors in licensing an infringer with the wrong entity would not provide any basis for alleging the license was not enforceable. Nor, of course, would any such error be relevant to whether the underlying patent inquiry was objectively baseless.

### 3.    State's Claims That Are Plainly Subjective

In ¶56a, the State alleges that MPHJ threatened suit without intending to sue. Similar allegations are made in ¶57a and ¶57b. MPHJ strongly denies these allegations. However, for purposes here, it is sufficient to observe that this Court has made it clear that such an allegation relates only to subjective considerations, and not objective baselessness. *See, e.g., Globetrotter*, 362 F.3d at 1375 (holding that allegations regarding threats to sue without intent to sue relate, at most, to the question of subjective baselessness); *GP Indus.*, 500 F.3d at 1375 (while there may have been sufficient evidence to support subjective bad faith by sending letters indiscriminately, because there was evidence to suggest that the patents were valid and infringed, the activity was protected by the First Amendment).

The State relies here heavily on a quotation from *Golan*, which stated that "notifying infringers of potential patent infringement claims without intending to file suit 'may be an example of bad faith.'" Exh. 5 at 23. But here it is clear that *Golan* is referring to the issue of "subjective bad faith" and not objective

24

baselessness. Reading *Golan* makes it clear that the *Golan* court correctly applied

the two-part test of *Prof'l Real Estate Investors*, as the court in *Globetrotter*

subsequently confirmed. *Golan*, 310 F.3d at 1371; *Globetrotter*, 362 F.3d at 1377.

The *Golan* court expressly made this clear in making the following statement:

> [I]f the party challenging such statements under state or federal law
> presents clear and convincing evidence that the infringement
> allegations are objectively false, <u>and</u> that the patentee made them in
> bad faith, viz., with knowledge of their incorrectness or falsity, or
> disregard for either, the statements are actionable and are not
> protected by the existence of the patent.

*Golan*, 310 F.3d at 1371 (emphasis added). This quotation from *Golan* deserves

careful consideration. The Court will see that it clearly sets out a two-part test.

First, a challenger must show "the infringement allegations were objectively false."

This is the objective baselessness prong of the test of *Prof'l Real Estate Investors*

(later clearly confirmed by *Globetrotter*). Then, the quotation clearly uses the term

"and" to indicate that if this first requirement is met, the challenger must, in

addition, show "bad faith." And by use of the term "viz" the court indicates that

such bad faith may be shown by falsity or disregard for falsity. But in using the

term "bad faith" in this context, *Golan* plainly uses it in its "subjective" sense.

Thus, the State's allegation that MPHJ threatened to sue without intending to sue

would relate, at best, to subjective baselessness.[28] As *Globetrotter* and *GP Indus.*

---

[28] The other problem the State has with *Golan* is that the *Golan* court recognized
that a patent owner does have the right to threaten to sue without intending to sue if
doing so is reasonable. The example given by the *Golan* court is one where the
actual suit would cost the patent owner more than the potential recovery, in which
case the *Golan* court holds it is perfectly permissible for the patent owner to
aggressively assert its patent rights and never intend to file suit. *See Golan,* 310
F.3d at 1372. Thus, an allegation that a patent owner made a threat to sue without

confirmed, a "threat to sue without intent to sue" would not relate to objective

baselessness.

In ¶¶ 57f and 57g, the State also relies heavily on statements in MPHJ's first

letter that stated that prior entities who received inquiries about infringement of the

patents had a "positive response" to the licensing effort, and that "most businesses

were interested in obtaining a license if they infringed." Exh. 15 at A-3.  MPHJ's

predecessor sent similar letters to enforce the patents, and based upon its

experience had concluded that recipients responded in this manner. *Id.* Considering

itself the successor to that entity, MPHJ included these same opinions. Exh. 15 at

A-1. The State contends these statements are not true, and violate the VCPA. But

there could hardly a better example of preemption. Setting aside that MPHJ

believes the statements are true, these allegations plainly at most are related to

subjective considerations. As such, the allegations cannot serve to negate

preemption. *See, e.g., Globetrotter*, 362 F.3d at 1375; *Motorola Solutions, Inc.*,

2013 U.S. Dist. LEXIS 15968, at *64-69 ("general statements about the number of

licenses it has granted, the cost of those licenses, the reputation of the inventors of

its patents, and the number of times its patents had been adjudicated are all

peripheral to the question of infringement," and thus, "those statements do not

make [the patentee's] licensing campaign a sham.").

The same is true for the State's claim in ¶57h regarding MPHJ's statement

that its proposed royalty payment was "fair." The State contends that MPHJ's

---

intent to sue would not even suffice to establish subjective bad faith without
including an allegation that the patent owner had no reasonable basis to do so.

26

characterization of its offer of between $900 and $1200 per employee as being "fair" was a violation of State law because MPHJ's predecessor, making generally the same offer, had settled with licensees at an average of $800. Exh. 15 at Exh. A-3. Expressing an opinion that a proposed royalty is fair is not relevant to objective baselessness. *See Motorola Solutions*, 2013 U.S. Dist. LEXIS 15968, at *64-69.

The last claim by the State in ¶57i is that MPHJ sent third letters to recipients who did not receive first and second letters. Setting aside that it would make no sense for MPHJ to intentionally do this, and that there is no evidence it occurred, this allegation, if it relates to anything, plainly relates to subjective considerations.

Thus, when considered in turn, not a single claim by the State relates to objective baselessness. The State has expressly disavowed, and is now estopped, from proving anything regarding the validity or infringement of the patents, and as such, the State cannot avoid preemption.[29] To require MPHJ to continue a case that is completely meritless is a stark violation of Rule 11.

## IV.   Mandamus Is Proper And Appropriate In This Case

### A.   Dismissal Under Rule 11 Is A Proper Purpose of Mandamus Here

Consistent with the purpose of §1404(a), mandamus is necessary to prevent further prejudice to not only MPHJ, but also the Vermont state court. If a mandamus does not issue, the parties and the state court will be forced to expend

---

[29] The State also argues that sanctions are inappropriate because other state and federal officials have investigated MPHJ or threatened to file suit against MPHJ. *See* Exh. 5. Clearly, the fact that others have inquired into MPHJ's activities has no bearing on whether the State's case has merit. This is especially true when the only court that has ever reviewed MPHJ's patent enforcement activities has found that MPHJ's efforts were entirely lawful and protected. *See* Exhs. 24 & 25.

time and resources on a motion to dismiss by MPHJ that should be granted. And, if by some oddity the Vermont state court ignores the well-settled Supreme Court and Federal Circuit law and decides that preemption does not apply, MPHJ will have to file an action against the Vermont AG under Section 1983. Either path requires the unnecessary expenditure of significant resources. All of these results could be avoided by a decision by this Court now.

This case raises the question of first impression of what happens when a challenger simply ignores this Court's preemption pleading requirements and pleads its case in a way that it convinces a federal district court that no federal question is presented on the face of the complaint and it remands to state court. Were the case filed in federal court, plainly it would be dismissed under *Matthews*. But if brought in state court, and removed, the challenger will argue, as Vermont did, that its refusal to plead objective baselessness means no federal question has been raised, and given that preemption arguably is only a defense, it cannot be relied upon to establish the federal question jurisdiction.[30] If this tactic is permitted, it will force every patent owner whose patent enforcement correspondence is challenged in state court to engage first in removal litigation, then state court litigation, and likely ultimately Section 1983 litigation, simply to preserve its First Amendment right to petition.

This Court has the power to prevent this unnecessary charade. It should decide that its own well-settled law on preemption applies to mean that

---

[30] The danger to national uniformity of patent law is even more endangered in this instance because of the provision in 28 U.S.C. § 1447(d) that prevents the patent owner from appealing the decision to remand in most circumstances.

maintaining a case asserting state law claims that is meritless because it does not plead and prove bad faith as defined in *Globetrotter*, is a violation of Rule 11(b)(1) and the appropriate solution is dismissal. For the purpose of maintaining uniformity in the patent system, both at the federal level, as well as at the state level, this Court should find the district court abused its discretion, and issue a writ of mandamus, directing the court to dismiss the State's suit against MPHJ and award any other sanctions it deems appropriate.

### B.    Mandamus Also Is Proper To Provide Guidance

As explained *supra*, this Court also has the discretion to use its mandamus power to settle substantial questions of law in circumstances that would assist the parties in this case and future parties to litigation.  Here, it should make clear that preemption can only be avoided even in state court by first pleading and proving the accused conduct was objectively baseless, and further that the State's pleading and allegations fail as a matter of law to satisfy this standard.

### C.    MPHJ Has No Other Adequate Means To Obtain This Relief

As noted, MPHJ has filed a Notice of Appeal with respect to certain aspects of the Court's remand order.  MPHJ included in that Notice the denial of its Rule 11 Motion.  However, MPHJ believes that there is at least some law to support that the denial of a party's motion for Rule 11 sanctions is not a final decision appealable under 28 U.S.C. § 1291. *See, e.g., McCright v. Santoki,* 976 F.2d 568, 569 (9th Cir. 1992) (holding that a party may not immediately appeal the denial of sanctions) (citing *Cohen v. Beneficial Industrial Loan Corp*., 337 U.S. 541, 546 (1949)). *See also Buchanan v. U.S.,* 82 F.3d 706, 708 (7th Cir. 1996).

Here, the District Court remanded the State's case to Vermont state court. So, the case in one sense has not "ended," but it could be asserted that the District Court litigation has ended. If MPHJ cannot appeal the District Court's denial of its Motion for Sanctions, MPHJ has no other adequate means to obtain the relief sought herein. Because of these unique considerations and the lack of clarity at this stage as to whether MPHJ can appeal the denial of its motion, out of caution MPHJ filed this petition to preserve its rights to have the district court's decision reviewed, while also citing it as an issue in its Notice of Appeal.[31]

## CONCLUSION

MPHJ respectfully requests that the Court grant this petition for a writ of mandamus, and direct the district court to grant MPHJ's Motion, promptly dismiss the State's Complaint, and impose such other sanctions it deems appropriate. In the alternative, MPHJ respectfully requests this Court issue a decision declaring the State's Complaint preempted under *Matthews*, and the State's allegations insufficient to establish the objectively baseless part of the *Globetrotter* "bad faith" requirement to avoid preemption.

---

[31] If this Court concludes that appeal, rather than mandamus, is the appropriate avenue, MPHJ respectfully requests that the Court accept this briefing on that issue for its appeal. *See, e.g., Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d. Cir. 2005) (court has "discretion to treat a notice of appeal as a petition for a writ of mandamus"); *In re Brady*, 2013 U.S. App. LEXIS 7264, at *1-2 (Fed. Cir. 2013) (treating writ of mandamus as a notice of appeal).

May 14, 2014                          FARNEY DANIELS PC

                                      */s/ W. Bryan Farney*
                                      W. Bryan Farney
                                      800 South Austin Ave., Ste. 200
                                      Georgetown, Texas 78626
                                      Telephone: (512) 582-2828
                                      Facsimile: (512) 582-2829
                                      bfarney@farneydaniels.com

                                      *Counsel for MPHJ Technology*
                                      *Investments, LLC*

## CERTIFICATE OF SERVICE

United States Court of Appeals
for the Federal Circuit
Misc. No. _____
-----------------------------------------------------------------)
IN RE MPHJ TECHNOLOGY INVESTMENTS, LLC
                         *Petitioner.*
-----------------------------------------------------------------)

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by FARNEY DANIELS PC, attorneys for Petitioner to print this document. I am an employee of Counsel Press.

On the **14th Day of May, 2014**, I served the within **Petition for Writ of Mandamus** upon:

> Bridget C. Asay
> Ryan Kriger
> Naomi Sheffield
> Assistant Attorneys General
> Office of the Attorney General
> 109 State Street
> Montpelier, VT 05609
> Tel. (802) 828-5500
> basay@atg.state.vt.us
> rkriger@atg.state.vt.us
> nsheffield@state.vt.us
> *Attorneys for State of Vermont*

*via* **Express Mail and E-Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Additionally, a copy will be sent to these U.S. District Judges:

Hon. William K. Sessions, III
U.S. District Judge
U.S. District Court for the
District of Vermont
P.O. Box 928
Burlington, VT 05402-0928
Phone: (802) 951-6350

**via Express Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, 4 copies and a pdf copy on disk, along with the required filing fee, have been hand-delivered to the Court on the same date as above.

May 14, 2014

John C. Kruesi, Jr.
Counsel Press